UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

EDDIE LANE, JR.                         CIVIL ACTION NO. 09-cv-2153

VERSUS                                  JUDGE STAGG

WARDEN, LOUISIANA STATE                 MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Eddie Robert Lane, Jr. ("Petitioner") of armed robbery.
Petitioner was adjudicated a fourth-felony offender and sentenced to life imprisonment.  He
pursued a direct appeal, State v. Lane, 927 So.2d 659, La. App. 2d Cir. (2006), writ denied,
944 So.2d 1283 (La. 2006) and 956 So.2d 599 (La. 2007), as well as a post-conviction
application in the state courts.  He originally sought federal habeas relief on five of the issues
presented in the state courts, but he voluntarily dismissed one claim (improper vouching for
credibility of witness) after the court pointed out that he had not properly exhausted his state
court remedies with respect to that claim.  Docs. 9 and 10.  For the reasons that follow, it is
recommended that the other claims in the petition also be denied.

**Sufficiency of the Evidence**

Petitioner was charged with armed robbery, which is the taking of anything of value
belonging to another from the person of another or that is in the immediate control of
another, by use of force or intimidation, while armed with a dangerous weapon.  La.R.S.

14:64.  Petitioner argued on direct appeal that the evidence was insufficient to support his conviction under that statute.  He now seeks habeas relief on the same claim.

Yolanda Burnom, a 30-year-old readjustment counselor at the VA, went to the H&H Lounge in Shreveport after midnight on an evening in March 2004.  As she walked in the club, she began pulling out some money to pay the cover charge.  A young man, who was sitting in the passenger side of a nearby white car (Ms. Burnom believed it was a Buick), called to her and asked if she had a smoke.  She replied that she did not smoke or drink, and she went inside the club.  Ms. Burnom testified that the area was well lit, and she identified Petitioner in the courtroom as the young man.

Ms. Burnom left the club 30 to 45 minutes later with $15 in her pocket.  She talked to a friend on her cell phone as she walked to her car.  She pulled out her keys to unlock her Ford Explorer when she felt something brush against her from behind.  She turned around to see Petitioner, and she asked, "What's up?"  She then looked down and saw that Petitioner had a gun in his hand, which she described as similar to a 9 mm Glock pistol.  Petitioner told her to get off the phone, don't make a noise, and give him her money.

Ms. Burnom tried to persuade Petitioner not to carry out the crime, noting all the people in the area and claiming that she worked for the FBI.  When challenged, Ms. Burnom tried to bluff by showing Petitioner an old Oregon ID and her VA badge.  They then had a detailed conversation about whether she was really an FBI agent, during which Ms. Burnom added that she knew the police officer who was working security detail at the lounge that night. She eventually offered to give Petitioner $40, saying she would not even have to write

up a report and he could go about his business. Petitioner agreed.  Ms. Burnom was able to produce only $15.  Petitioner argued for the rest of the $40 and started to pat her down.  Ms. Burnom took this opportunity to push him aside and take off running.  She grabbed a police officer and told him a man had tried to rob her.

A police officer responded to the robbery call.  Ms. Burnom told him what had been taken, but she noticed later that she was missing an additional wallet, her palm pilot, and her car keys.  After she gave her report, she remembered that she had an extra set of keys and started to leave.  A friend came out of the lounge and asked for a ride.  Ms. Burnom took that woman home and was driving with another friend just two or three blocks from the lounge when she noticed Petitioner standing near the street and drinking beer with two other men.  She rolled down her window, pointed, and said he was the guy who had robbed her.  Petitioner saw Ms. Burnom, dropped his beer, and ran.  She located and awoke two patrol officers who were parked at the end of the street.

Ms. Burnom later received information that the man who robbed her was known as Pootie Loc, actual name Eddie Lane, and lived at an address on Looney Street.  She gave this information to Detective McConnell, who identified Eddie Lane, Jr. as a suspect.  He assembled a six-man photo lineup and showed it to Ms. Burnom.  He told her that the suspect may or may not be in the lineup.

Ms. Burnom testified that with the light from her vehicle and the well-lit area she had seen the robber "quite well."  She estimated that their conversation lasted as long as 20

minutes.   McConnell testified that Burnom "without hesitation" decisively identified Petitioner as the robber.  Ms. Burnom also testified about her identification:

> Q.   And when he showed you this lineup, how quickly did you identify Eddie Lane?
>
> A.   He showed the lineup.  I said: Not him, not him, not him.  This is him. Not him, not him.
>
> Q.   Okay.  And from looking at this photograph, how positive were you that this was the person that robbed you that night?
>
> A.   One hundred percent positive.

Ms. Burnom also identified Petitioner in the courtroom.

Police arrested Petitioner about two weeks after the robbery.  They did not seek a search warrant for his home, and they never recovered a weapon or any of the stolen property.  Fingerprints were taken from an area on Ms. Burnom's recently-washed car where she said the robber touched it.  The officer lifted two prints, but they were not linked to Petitioner or anyone else.

Ms. Burnom had given the police a license plate number of the car that she believed the robber was sitting in when she first approached the club.  The plate was registered to Laquondra Golston, who was the sole witness for the defense.  Golston testified that the car was a white Oldsmobile 88 and that she would have parked it at the lounge perhaps two or three times during the month of the robbery.  She testified that she did not know Petitioner, but she knew "of him" from the neighborhood and knew that his name was Eddie.  She said that she did not allow anyone else to use her car or get inside it when it was parked at the

lounge, and it was her practice to keep it locked at all times. There was extensive questioning by both sides as to how Ms. Golston was sure her car was at the lounge on March 12, the night of the robbery. Her final answer was: "Rumors. I hear rumors. Just things I have heard of. I don't know nothing."

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

The state court reviewed the evidence in detail, recited the elements of armed robbery, and set forth the correct Jackson standard. Petitioner argued to that court, as he does here,

that the victim's testimony was not corroborated and was insufficient to support a conviction. He faults the victim for not giving a more detailed description of the robber, including his facial tattoos.  He also pointed to the lack of recovered items, fingerprints, or other physical evidence to connect him to the robbery.  On the other hand, there was compelling testimony by the victim who positively identified Petitioner in the photo lineup and again in court.  The state court rejected the claim, noting that the victim's credibility on the identity of the robber was a decision for the jury that had to be respected under the Jackson standard.

The state court was correct. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).  A rational trier of fact could have believed the victim and found the essential elements of armed robbery beyond a reasonable doubt.  The state court's application of Jackson to these facts was entirely reasonable and does not permit habeas relief.

### Adjudication as Fourth-Felony Offender

Petitioner was adjudicated a fourth-felony offender based on prior convictions for aggravated battery, illegal possession of stolen things, and simple robbery.  He objected in state court that the trial courts who accepted his pleas to those prior offenses had not advised him of the right to compulsory process or that he could receive enhanced penalties in the future because of the convictions.  Petitioner also complains that the courts did not inquire into his educational background or determine whether he could read or write English.

The state court, on direct appeal, rejected the arguments that the courts were required to advise him of the right to compulsory process or inform him that his conviction could be

used for filing a future multiple offender bill.  It is also noted that minutes showed that he was advised of his rights as required by Boykin and was represented by counsel at each of the hearings where a guilty plea was entered.  State v. Lane, 927 So.2d at 664-66.

Petitioner renews the same arguments in his federal petition.  They are foreclosed by Lackawanna County District Attorney v. Coss, 121 S.Ct. 1567 (2001).  That decision holds that habeas relief is unavailable to a state prisoner when he challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the prisoner is no longer in custody.  There is an exception if counsel was not appointed in connection with a prior conviction, but the records in this case show that Petitioner was afforded counsel when he pleaded guilty to the prior felonies. No habeas relief is available on this claim.

**Excessive Sentence**

The Louisiana multiple offender statute mandated a natural life sentence for Petitioner as a fourth-felony offender.  Defense counsel argued the sentence would be constitutionally excessive, but the trial court overruled the objection and imposed the life sentence.  Tr. 299-300.  Petitioner argued on direct appeal that his sentence was excessive under Art. I, Section 20 of the Louisiana Constitution.  Tr. 323-26.  His federal habeas petition also frames the argument in terms of state law, specifically invoking Article I, Section 20 and La. C. Cr. P. art. 894.1, which governs sentencing procedure in Louisiana courts.

Petitioner has not invoked the Eighth Amendment or other provisions of the federal Constitution in his arguments to the state court or in his federal petition.  Federal habeas

relief is available only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas court does not determine if the state courts properly applied state law.  Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991).  Petitioner's argument was strictly confined to state law so he did not raise and exhaust a federal claim in the state courts that would be cognizable on habeas.  Baldwin v. Reese, 124 S.Ct. 1347 (2004) (claim in state court petition for ineffective assistance of appellate counsel not exhausted because not identified as federal in nature); Vallier v. Terrell, 2006 WL 3925066, *9 (W.D. La. 2006) (addressing similar excessive sentence issue).

Assuming a federal claim was exhausted, it would lack habeas merit. The best case for Petitioner is Solem v. Helm, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) a closely divided Court upheld a life sentence for possession of a large quantity of cocaine. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

A determination of whether a sentence is grossly disproportionate for a particular crime begins by comparing the gravity of the offense and the severity of the sentence. <u>Graham</u>, 130 S.Ct. at 2022. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. <u>Id</u>.; <u>McGruder v. Puckett</u>, 954 F.2d 313, 316 (5th Cir.1992). The court must be mindful that the sentence is imposed to reflect the seriousness of the most recent offense, not as it stands alone, but in the light of the prior offenses. <u>McGruder</u>, <u>supra</u>.

A person convicted of armed robbery faces a base sentence of 10 to 99 years, without benefits.  Petitioner's sentence was enhanced to a life sentence because of three prior felony convictions that included a simple robbery and aggravated battery, which are serious crimes that pose great risk to the victims. His sentence is not shocking. Petitioner's criminal history

shows that past prison sentences were not adequate to deter him from continuing his life of crime. Locking him up and getting him out of society was likely the only way to stop him from committing more felonies. The sentence was not grossly disproportionate to the crime, in light of the prior offenses.[1] As in Lockyer, the state court's rejection of the argument was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

**Ineffective Assistance of Counsel**

Petitioner claims that his counsel was ineffective because he failed to interview Sonny Wright, a security guard at the lounge, who could testify that he knew Petitioner, saw the black male who ran from the scene of the crime, and knows that the man was not Petitioner. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Failure to interview an eyewitness, even if there is a vigorous cross-examination at trial, is generally

---

[1] The defendant in State v. Smith, 734 So.2d 826, 834 (La. App. 4th Cir. 1999) was adjudicated a third-felony offender and sentenced to life imprisonment.  His convictions were distribution of cocaine, purse snatching, and simple burglary.  The Fifth Circuit rejected a challenge to the sentence when presented on habeas review.  Smith v. Cain, 2001 WL 498441 (5th Cir. 2001).

deficient representation. <u>Anderson v. Johnson</u>, 338 F.3d at 391, citing <u>Bryant v. Scott</u>, 28

F.3d 1411, 1417 (5th Cir. 1994).

   Petitioner presented this claim in his post-conviction application.  The appellate court

found that the application stated facts that, if proved true, might entitle Petitioner to relief,

so the matter was remanded for additional evidentiary procedures allowed under Louisiana

post-conviction rules. Tr. 944-45.  The trial court received an affidavit from defense counsel,

who testified that he did find and interview two witnesses (Petitioner also complained in his

state PCA that counsel did not interview his girlfriend) who were to testify that Petitioner

was elsewhere when the robbery happened.   Counsel said the witnesses were interviewed

months before trial and initially confirmed Petitioner's statement that he was not at the

robbery scene when it occurred.   The witnesses were subpoenaed to trial but, before

testifying, they recanted and refused to confirm the alibi.  Counsel said he explained this to

Petitioner, who "agreed with the decision not to use these two individuals for trial." Tr. 956-

57.  The trial court, based largely on that affidavit, rejected the claim.  Tr. 946-48.  The

appellate court denied a writ application, stating that Petitioner had failed to meet his burden.

Tr. 979.  The Supreme Court of Louisiana denied writs without comment.  Tr. 999.

   Petitioner's claim was adjudicated and denied on the merits by the state court, so 28

U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state

court's determination under the <u>Strickland</u> standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. <u>Schriro v.

Landrigan</u>, 127 S.Ct. 1933, 1939 ( 2007). The <u>Strickland</u> standard is a general standard, so

a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

The record fully supports the state court's adjudication of this claim, leaving no plausible argument that habeas relief is available.  Petitioner ignores the affidavit from counsel that undermines his arguments, while offering a recently dated affidavit from Sonny Gaston.  Petitioner says he initially gave his attorney the wrong name, Sonny Wright, for the security guard; he recently learned the correct name is Gaston.  The witness testifies that he was not notified or questioned about a robbery at the lounge on March 12, 2004, was never questioned by a lawyer or investigator about the matter, and does not remember anyone identifying Petitioner as having robbed them.  This evidence, which was not before the state court, may not be considered. A Strickland petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).  Habeas relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied and dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of February, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE